UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Crystal Griffin-Dudley, et al.,                           Case No.  3:22-cv-1511

         Plaintiffs

   v.

                                    MEMORANDUM OPINION
                                    AND ORDER

Lucas Metropolitan Housing
Authority, et al.,

         Defendants

### INTRODUCTION

*Pro se* plaintiffs Crystal Griffin-Dudley, Matthew Dudley, and Joshua Dudley filed this action against defendants Lucas Metropolitan Housing Authority (LMHA) and the United States Department of Housing and Urban Development (HUD), alleging breach of contract, breach of implied warranty of habitability, and breach of covenant of quiet enjoyment arising from their lease of residential property from LMHA.  (Doc. 1.)  Plaintiffs also have moved to proceed *in forma pauperis*; that motion is granted.  (Doc. 2.)  For the following reasons, I dismiss plaintiffs' complaint.

### FACTUAL BACKGROUND

Plaintiffs, three family members, have lived at 1155 Palmwood Avenue in Toledo, Ohio, for the past six years.  (Doc. 1 at 2.)  They lease the property from LMHA pursuant to a written lease agreement, which they allege is a "three-party HUD Subsidy Contract (Lease)."  (*See, e.g., id.* at 2-3, 6-7.)  Plaintiffs do not attach a copy of the lease to their complaint.

As best as can be discerned from the complaint, the relationship between the family and their landlord became contentious sometime around June 2021, when LMHA filed an eviction action against them in the Toledo Municipal Court (case no. CVG-21-08297). (*Id.* at 4.) According to that court's online docket, that lawsuit remains pending in the Lucas County Court of Appeals. Also, an unsigned copy of plaintiffs' lease for the Palmwood Avenue residence attached to LMHA's complaint in the eviction case (the original, signed lease apparently was lost) indicates that HUD was not a signatory to the lease.

Meanwhile, shortly after LMHA filed the eviction suit, in August 2021, plaintiffs notified LMHA that their home was infested with mice. (*Id.* at 3.) They contend the agency did not timely act on their complaint, however, and the house is now "uninhabitable." (*Id.*)

In July 2022, LMHA, based on plaintiffs' complaints and reports from pest control companies regarding the mice, offered to transfer plaintiffs to another home, pay for the costs of the transfer, and waive three months' rent if the family would move out of the Palmwood Avenue residence by August 15, 2022. (*See* Doc. 1-1, Ex. A.) Plaintiffs claim this offer was "an unsuccessful attempt to trick [the family] out of their Relocation entitlement," and they rejected the offer. (Doc. 1 at 3-4.) They also allege that LMHA has retaliated against them for placing their rent in escrow with the Toledo Municipal Court since February 2022.

Plaintiffs assert three claims for relief against defendants LMHA and HUD: (1) breach of contract; (2) breach of implied warranty of habitability; and (3) breach of unlimited covenant of quiet enjoyment. (*Id.* at 7-10.) They seek compensatory damages of $10,000 against each defendant for "mental anguish, negligence and breach of contract," and punitive damages against LMHA for $75,000. (*Id.* at 10.)

## STANDARD OF REVIEW

*Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers" and must be liberally construed.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, district courts are required to screen all *in forma pauperis* actions and dismiss before service any action the court determines is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

To state a claim, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Hill*, 630 F.3d at 471 (applying the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), to dismissals for failure to state a claim under § 1915(e)(2)(B)).  The "allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard.  *Id.*

## ANALYSIS

Plaintiffs assert three bases for federal jurisdiction over this suit: (1) general federal question jurisdiction under 28 U.S.C. § 1331(a) because the claims implicate certain HUD administrative regulations; (2) 28 U.S.C. § 1346(a), which permits breach-of-contract actions against the United States in which damages do not exceed $10,000; and (3) diversity jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.  (Doc. 1 at 6.)

As an initial matter, with respect to HUD, I note that absent a waiver, sovereign immunity shields the federal government, its agencies, and employees from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988)).  The United States Housing Act of 1937, 42 U.S.C. § 1404(a), provides that the United States Housing Authority may "sue and be sued" with respect to its functions under this chapter, however, and therefore waives the sovereign immunity of HUD in this case. *See Portsmouth Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 471, 475 (4th Cir. 1983); *United States v. Adams*, 634 F.2d 1261, 1265 (10th Cir. 1980); *Tempo, Inc. v. City of Gladstone Hous. Comm'n.*, 635 F. Supp. 879, 881 (W.D. Mich. 1984); *Jemo Assoc., Inc., v. Greene Metro. Hous. Auth.*, 523 F. Supp. 186, 187 (S.D. Ohio 1981); *Ippolito-Lutz, Inc. v. Harris*, 473 F. Supp. 255, 259 (S.D.N.Y. 1979).  That provision, however, "does not, in and of itself, provide an independent source of federal jurisdiction." *Jemo Assoc., Inc.,* 523 F. Supp. at 187-88 (citing *Ippolito-Lutz, Inc.,* 473 F. Supp. at 259).

And here, plaintiffs have not identified a valid basis for federal jurisdiction.  First, there is no general federal-question jurisdiction.  Federal district courts have original jurisdiction in actions "arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331(a).  But plaintiffs essentially allege breach of contract against HUD and LMHA, claims that ordinarily are governed by state law and do not present a federal question.  Aside from HUD being a party, the only federal involvement in this contract dispute is that interpretations of federal regulations may be involved.  Plaintiffs cite HUD regulations that set forth requirements for leases between public housing authorities (PHAs) and individuals – specifically, those found in 24 CFR § 966.4(e)(1) and (2), which delineate the PHA's obligation to provide and maintain its housing in compliance with HUD's general health and safety standards.  (Doc. 1 at 2-3.)

But the mere possibility that these HUD regulations may apply in interpreting plaintiffs' lease with LMHA is not necessarily a sufficient basis upon which to ground federal question jurisdiction.  In deciding whether the involvement of federal law in legal disputes ordinarily

governed by state law confers federal question jurisdiction, district courts must determine "whether the federal elements are merely ingredients of a larger state law claim or whether they predominate in the contractual dispute." *Jemo Assoc., Inc.*, 523 F. Supp. at 188.

Courts examine factors such as:  whether the facts demonstrate that the remedy the plaintiffs seek is premised on a breach of contract governed by state law; if federal law creates the remedy sought; and if the claim requires either the construction or interpretation of a federal statute, or the application of federal principles in order to vindicate a distinctive policy of the federal housing laws. *Id.* (citing *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974); *Ippolito-Lutz, Inc.,* 473 F. Supp. at 259).

Plaintiffs' claims stem from the alleged rodent infestation of the Palmwood Avenue residence – a garden variety breach-of-contract claim under state landlord-tenant law.  Their claims and the remedies they seek "are created by state law, are not expressly granted by federal statutes or regulations, do not require interpretation of a federal statute, and are not part of a distinctive federal policy regarding the housing laws." *Id.*

Moreover, the mere fact that the contract would be subject to federal regulation does not indicate that the performance or nonperformance of the contract should be governed by federal law, rather than by state law governing similar contracts not subject to federal regulation.  *Id.* at 188-89 (citing *Lindy,* 501 F.2d at 1369; *M. B. Guran Co., Inc. v. City of Akron*, 546 F.2d 201, 205 (6th Cir. 1976) (city violation of competitive bid guidelines contained in a HUD handbook did not give use to an implied right of action cognizable in federal court by the disappointed contractor; case seen "as one which is traditionally relegated to state law")).  There is thus no basis for federal question jurisdiction in this case.

Nor does federal jurisdiction lie under 28 U.S.C. § 1346(a).  As noted above, HUD is not a party to the lease agreement for the Palmwood Avenue property, and plaintiffs have no claim for breach of contract against it.

Finally, federal jurisdiction cannot be grounded in 28 U.S.C. § 1332.  For diversity jurisdiction to exist, there must be complete diversity between the parties; no opposing parties may be citizens of the same state.  *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267 (1806).  Plaintiffs are citizens of Ohio, suing, in addition to HUD, LMHA, also a citizen of Ohio.  There is no complete diversity among the parties, therefore, and jurisdiction also does not exist under 28 U.S.C. § 1332.

Accordingly, I have no jurisdiction over this action, and it must be dismissed.  Furthermore, without a viable federal claim or diversity of citizenship, I must decline to exercise supplemental jurisdiction and dismiss plaintiffs' state-law claims against LMHA without prejudice to refiling those claims in the state court.  *See* 28 U.S.C. § 1367; se*e also Booker v. City of Beachwood*, 451 F. App'x 521, 522-23 (6th Cir. 2011) ("Once [a] district court dismisse[s] all of the claims over which it ha[s] original jurisdiction, it act[s] squarely within its discretion by declining supplemental jurisdiction over the remaining [state law] claim[s] and dismissing [them] without prejudice"); *McGhee v. Light*, 384 F. Supp. 3d 894, 897–98 (S.D. Ohio 2019) (same).

## CONCLUSION

Having considered and examined the plaintiffs' *pro se* complaint to determine its legal viability, I conclude that it must be dismissed due to lack of jurisdiction.  I further certify, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.  This case is closed.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

6